**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

RAWSON FOOD SERVICES, INC. and : 
PRINCETON FOOD SERVICES, LLC, :
                        :

          Plaintiffs,     :     Civil Action No. 13-3084 (MAS) (DEA)
                        :

             v.         :     **MEMORANDUM OPINION**
                        :

TD BANK, N.A.,          :
                        :

          Defendant.     :

---

**SHIPP, District Judge**

      Defendant TD Bank moves to dismiss this diversity action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot., ECF No. 10.) Plaintiffs filed opposition (Pl.'s Opp'n, ECF No. 16) and Defendant replied (Def.'s Reply, ECF No. 17). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendant's motion is granted in part and denied in part.

**I.**    **Background**

      Plaintiffs Rawson Food Services, Inc. and Princeton Food Services, LLC ("Rawson" or "Plaintiffs"), are New Jersey based companies that operate a number of fast food franchises in New Jersey and New York. (Compl. ¶¶ 3, 8-9.) Defendant TD Bank is headquartered in Delaware. (Compl. ¶ 10.)

      From 1999 up until around the time this action began, Rawson was a regular customer of TD Bank. TD Bank regularly extended variable and fixed interest rate loans to Rawson for

operational expenses and to finance the expansion of its business. (Compl. ¶ 18.) Rawson periodically re-financed existing loans in order to obtain more favorable interest rates, increase credit limits, or extend maturation dates. (Compl. ¶ 20.) Rawson was accustomed to paying prepayment penalties as part of the refinancing process. (Compl. ¶ 21.)

Over the years, Rawson developed a relationship with TD Bank and regularly sought financial advice from its employees. TD Bank employees were acquainted with Rawson's financial needs and its practice of refinancing debt obligations in order to obtain more favorable repayment terms. (Compl. ¶ 37.)

In July 2006, Rawson obtained from TD Bank two loans totaling just under $13.5 million. (Compl. ¶ 25.) The interest rate on both loans was fixed at 7.5% for the first five years. After five years, the interest rate would either remain at 7.5% or increase to 2.5% above the prevailing United States Treasury Note Average Yield. (Compl. ¶¶ 26-27.) Rawson agreed to pay a prepayment penalty of 4% if it retired the balance of the loan during the first year. The prepayment penalty would diminish every year and there would be no penalty if Plaintiffs retired the debt in the fifth year of the loan. (Compl. ¶ 28.)

In 2008, Rawson approached TD Bank to discuss refinancing the loans at a lower interest rate. TD Bank falsely represented to Rawson that there was "no possibility" of obtaining a lower fixed interest rate on the debt. (Compl. ¶¶ 30-31.) TD Bank did, however, recommend an alternative to traditional financing: an "interest-rate swap." TD Bank informed Rawson that a swap could be structured in a way that would make it "equivalent" to a fixed interest rate loan. (Compl. ¶ 31.) TD Bank "specifically represented [interest-rate swaps] to be the best way for Plaintiff[s] to (a) fix the interest rate in connection with the contemplated loan transaction, and (b) earn money if interest rates increased." (Compl. ¶ 32.)

Bank representatives warned Rawson that it would pay a "Breakage Fee" if it terminated the swap, but they "never disclosed the amount or magnitude of the potential fee(s) (or the manner in which the fee would be calculated)." (Compl. ¶ 33.) In fact, TD Bank assured Rawson that the Breakage Fee would be "similar" to the pre-payment penalties Rawson paid when it refinanced traditional loans. (Compl. ¶ 36.) Plaintiffs allege that TD Bank intentionally misrepresented or obscured the potential amount of the Breakage Fee, which would, in fact, be significantly more expensive than a typical prepayment penalty. (Compl. ¶ 33.)

Relying on TD Bank's "specific representations and misrepresentations," Plaintiffs entered into a Swap Agreement with TD Bank based on the outstanding balance of the loans it received in 2006. (Compl. ¶¶ 39-40.) The Agreement, executed on April 18, 2008, consisted of three documents: a Master Agreement, a Schedule to the Master Agreement, and the Confirmations exchanged by the parties to consummate the deal.[1]

Rawson did not discover TD Bank's misrepresentations until it attempted to refinance its debt in late 2010. (Compl. ¶¶ 43-44.) At that time, Bank employees informed Plaintiffs that the process of modifying the Swap Agreement was complicated and the costs of such a modification would be difficult to predict. Bank representatives' explanations of the process used to calculate the Breakage Fee were convoluted and unsatisfactory. (Compl. ¶ 44.) Confused, Rawson decided to leave the Agreement in place for 2011. (Compl. ¶¶ 45-47.)

Finally in 2012, Rawson decided to terminate the Agreement. (Compl. ¶ 47.) Upon termination, Rawson paid a $955,323.00 Breakage Fee "assessed and calculated by TD Bank." (Compl. ¶ 47.)

---

[1] Defendant submitted a copy of the Swap Agreement with its motion to dismiss the Complaint. (*See* Def.'s Mot., Exhs. A-D.) The Complaint does not provide a description of the Agreement.

3

Plaintiffs allege that TD Bank intentionally, recklessly, or negligently misrepresented the potential size of the Breakage Fee in order to convince Rawson to enter into the swap, which was designed to maximize the Bank's profits. Plaintiffs claim that TD Bank earned an undisclosed fee of $250,000 through the transaction. According to Plaintiffs, TD Bank also failed to disclose that it had "created strong incentives for its employees to market and sell Swaps" or that "there were other disinterested counter-parties which could have entered into any appropriate swaps without the conflict of interest that TD possessed at all pertinent times." (Compl. ¶ 34.)

Based on the foregoing, Plaintiffs assert claims against TD Bank for fraudulent inducement (Count I), negligent misrepresentation (Count II), breach of fiduciary duties (Count III), and unjust enrichment (Count IV). They seek damages in the amount of $1,200,000, representing the Breakage Fee plus the $250,000 that TD Bank allegedly earned as a result of the swap.

## II.   Standard of Review

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a '"plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

4

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The court may, however, consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.   Analysis

Defendant moves to dismiss the Complaint on three grounds. First, Defendant argues that the Complaint's factual allegations fall short of the particularity standard applicable to fraud allegations under Rule 9(b) of the Federal Rules of Civil Procedure. Second, Defendant contends that the plain language of the Agreement bars Plaintiffs' claims as a matter of law. Finally, Defendant seeks wholesale dismissal of the Complaint based on the so-called "voluntary payment doctrine."

Before turning to Defendant's arguments, the Court must determine whether New York or New Jersey state law governs this dispute. Defendant urges the Court to apply the former, citing a choice-of-law clause in the Swap Agreement. The clause, contained in the Schedule to the Master Agreement, provides that "[this] Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine)." (Def.'s Mot., Exh. B, Part 3(e).) Plaintiffs denounce this language as "boilerplate." (Pl.'s Opp'n 5-6.) They argue that New Jersey law applies because neither party has any substantial connection to New York.

New Jersey's choice of law rules apply. *See Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New

Jersey's public policy." *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999) (internal quotation marks omitted). A court may disregard a contractual choice of law where "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (quoting Restatement (Second) of Conflicts of Laws § 187 (1969)).

The Agreement's choice of law provision is enforceable. Neither party suggests that the designation of New York law contravenes public policy. Moreover, the Complaint itself discloses that Plaintiffs' business extends into New York State. (Compl. ¶ 3.) The Court will therefore apply New York law to the extent it differs with the law of New Jersey. *Cf. Cornett v. Johnson & Johnson*, 48 A.3d 1041, 1048 (N.J. 2012) ("choice of law is not an issue unless there is a real conflict between the law of two jurisdictions"). Where New York and New Jersey law are consistent, the Court may apply the law of either state. *St. Matthew's Baptist Church v. Wachovia Bank Nat. Assoc.*, No. 04-4540, 2005 WL 1199045, at *4 (D.N.J. May 18, 2005).

### A.   Fraudulent Inducement

To plead fraudulent inducement under New York law, the plaintiff must allege "'a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.'" *Dexia SA/NV v. Bear, Stearns & Co., Inc.*, 929 F. Supp. 2d 231, 237-38 (S.D.N.Y. 2013) (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009)).

Plaintiffs concede that Rule 9(b) applies to their fraudulent inducement claim. Rule 9(b) provides that "the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy the rule, a plaintiff must "plead or allege the date, time and place of the alleged fraud

or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Where appropriate, the plaintiff must also identify both the individual who made the misrepresentation and the person to whom the misrepresentation was made. *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (Rule 9(b) requires claimant to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

Applying this standard to the allegations in this case, the Court finds that Plaintiffs have failed to adequately plead fraud. The Complaint provides almost no detail whatsoever regarding the date, time, and place of the alleged misrepresentations. For instance, Plaintiffs allege only that they initially approached TD Bank about refinancing their existing debt "in or about 2008." (Compl. ¶ 30.) The Complaint also fails to disclose any information as to the identities of the TD Bank employees who made the alleged misrepresentations. *See Donnelly v. Option One Mortg. Corp.*, No. 11-7019, 2013 WL 3336766, at *7 (D.N.J. July 1, 2013) (dismissing fraud claim against company because Complaint failed to state "who at [company] made [alleged] fraudulent statements").

In light of these deficiencies, Count One of the Complaint is dismissed without prejudice. Plaintiffs may file an amended pleading within thirty days of the date of this Opinion.

**B.   Negligent Misrepresentation**

To establish a claim for negligent misrepresentation under New York law, the plaintiff must allege that (1) the defendant had a duty to give correct information; (2) the defendant made a false representation that he or she knew or should have known was incorrect; (3) the defendant

knew that plaintiff sought the information supplied in the misrepresentation for a serious purpose; (4) the plaintiff intended to act in reliance on the information; and (5) the plaintiff reasonably relied on it to his or her detriment. *King Cnty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012). A declarant's duty to provide accurate information may exist outside of a fiduciary relationship. *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009). When, for instance, "'one party has superior knowledge not readily available to the other party,' the advantaged party may have a duty to disclose, even in the absence of any fiduciary relationship." *Europadisk Holdings, LLC v. Shelton*, No. 03-4505, 2004 WL 613109, at *3 (S.D.N.Y. March 26, 2004) (quoting *Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993)).

As noted above, Defendant asserts that the heightened pleading standard of Rule 9(b) applies to Plaintiff's negligent misrepresentation claim. The Court disagrees. Rule 9(b) does not apply to a freestanding negligence claim merely because it is pled together with an intentional fraud. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272-74 (3d Cir. 2006); *Donarch v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *5 (D.N.J. March 14, 2012); *Kirtley v. Wadekar*, No. 05-5383, 2006 WL 2482939, at *2 (D.N.J. Aug. 25, 2006) (holding that, where negligent misrepresentation is alleged as its own cause of action, it is not subject to Rule 9(b)). Defendant also contends Rawson's negligent misrepresentation claim fails in light of the Swap Agreement's plain language. Defendant points out that the Agreement is laden with broadly-worded disclaimers to the effect that each party understands the transaction and "is not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of the other Party to this Agreement." (Def.'s Mot.,

Ex. B, at Part 4(a)(iii)). Defendant contends that these provisions preclude Rawson from claiming reasonable reliance.

Under New York law a contractual non-reliance clause may preclude a party to the contract from claiming fraud or misrepresentation. When "the contract states that a contracting party disclaims the existence of or reliance upon *specified* representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (citing *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 976 (N.Y. 1985)) (emphasis supplied). General disclaimers are not accorded preclusive effect. *See CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07-11078, 2009 WL 2033048, at *4 (S.D.N.Y. July 13, 2009) (non-reliance provision ineffective unless it "track[s] the substance of the misrepresentation" at issue).

The "catch-all" provisions in the Agreement are insufficient to thwart Plaintiffs' claim at this stage of the litigation. *See Europadisk Holdings*, 2004 WL 613109, at *3 (refusing to dismiss fraud claims where contractual non-reliance clause did "not specifically disclaim reliance" on alleged misrepresentations). The Defendant has not pointed to language in the Agreement that speaks directly and conclusively to the misrepresentations alleged in the Complaint. There are, for instance, no provisions addressing statements comparing Breakage Fees to the early-payment penalties associated with traditional loans. (*See* Compl. ¶ 63.) Aside from this lack of specificity, the language is in many ways equivocal. For example, one clause proclaims that "information and explanations related to the terms and conditions of a Transaction shall not be considered investment advice or a recommendation to enter into [the] Transaction." (Def.'s Mot., Ex. B, at Part 4(a)(iii)). Read literally, this passage appears to permit reliance on "information and

explanations," but not "advice" and "recommendation[s]." The statements at issue in this case could plausibly belong in either of these categories.

Of course, it may be the case that the parties intended the Agreement's non-reliance language to reach the very representations at issue here. If there is evidence to this effect, Defendant may present it to the Court as part of a motion for summary judgment. *See AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 181 (3d Cir. 2003) ("non-reliance clauses are . . . among the circumstances to be considered in determining the reasonableness of [a party's] reliance" and may be dispositive of a federal securities fraud claim at "the summary judgment stage"); *White v. Kolinsky*, No. 10-2252, 2011 WL 1899307, at * 8 (D.N.J. May 18, 2011) (applying reasoning of *AES Corp.* to common law fraud claims). In the meantime, Defendant's motion to dismiss Count Two is denied.

### C.     Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege (1) a breach by a fiduciary of an obligation owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) damages resulting therefrom. *SCS Commc'ns Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 342 (2d Cir. 2004). A "debtor-creditor relationship is not by itself a fiduciary relationship." *Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002). However, the addition of a relationship of confidence, trust, or superior knowledge or control may indicate that such a relationship exists." *Id.*

Defendant argues that the Swap Agreement precludes Plaintiffs from asserting the existence of a fiduciary relationship. In this instance, Defendant's position finds support in the unambiguous language of the Swap Agreement, which expressly states that Defendant is not an "agent, broker, advisor or fiduciary in any respect." (Def.'s Mot., Ex. B, at Part 4(a)(ii).) This

10

"clear and unambiguous" disclaimer is sufficient to defeat Plaintiffs' claim for breach of a fiduciary duty. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 326 (S.D.N.Y. 2011); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2004).

In light of the disclaimer in the Agreement, an amendment to Plaintiffs' claim for breach of fiduciary duty would be futile. *See Seippel*, 341 F. Supp. 2d at 386 (denying leave to amend claim for breach of fiduciary duty under similar circumstances). Count Three is therefore dismissed with prejudice.

### D.     Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a claimant must establish (1) that the defendant benefitted; (2) at the claimant's expense; and (3) that equity and good conscience require restitution." *Mid-Island Hosp.*, 276 F.3d at 129. Ordinarily, the "'existence of a valid and enforceable written contract . . .   precludes recovery in quasi contract for events arising out of the same subject matter.'" *Landesbank Baden-Wurtemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 624-25 (S.D.N.Y. 2011) (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 242, 747 (N.Y. 2005)).

Defendant contends that the Swap Agreement precludes Plaintiffs from maintaining their unjust enrichment claim. (Def.'s Br. 28.) The Court disagrees. Defendant has not pointed to any provision in the Agreement that provided for the $250,000 fee that Defendant allegedly collected for its services. (*See* Compl. ¶ 34.) If the fees TD Bank collected fall outside of the agreement, Plaintiff may conceivably be permitted to recover them on an unjust enrichment theory. In any case, Plaintiffs may pursue recovery on an unjust enrichment theory so long as their fraudulent inducement claim is unresolved. *See Seippel*, 341 F. Supp. 2d at 380 (noting that plaintiff may recover on unjust enrichment theory if he prevails on accompanying fraudulent inducement

claim); *see also Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 618 (D.N.J. 2013) (permitting plaintiff to maintain unjust enrichment "[as] an alternate basis for recovery" because unresolved fraud claim created "bona fide dispute [as to] whether contract exists or covers the dispute," which arose under New York law).

Accordingly, Defendant's motion to dismiss Count Four is denied.

### E.    Voluntary Payment Doctrine

Defendant's reliance on the "voluntary payment doctrine" as an alternate basis for dismissing the Complaint is misplaced. *See Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003) (explaining that doctrine "bars recovery of payment voluntarily made with full knowledge of the facts, and in absence of fraud or mistake of material fact or law"). Nothing in the Complaint suggests that Rawson paid the seven-figure Breakage Fee "voluntarily, as a matter of convenience, without having made any effort to learn what its legal obligations were." *Gimbel Bros., Inc. v. Brook Shopping Cntrs.*, 499 N.Y.S.2d 435, 439 (N.Y. App. Div. 1986). To the contrary, Plaintiffs allege that they made the payment as a result of Defendant's misrepresentations. *See Samuel v. Time Warner Inc.*, 809 N.Y.S.2d 408, 418 (N.Y. Sup. Ct. 2005) (voluntary payment doctrine not applicable when claim predicated on lack of full disclosure) (cited in *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009)). As a result, the Defendant's motion is denied insofar as it relies on the voluntary payment doctrine.

IV.      **Conclusion**

For the reasons set forth above, and for other good cause shown, Defendant's motion to dismiss is granted with respect to Count One, which is dismissed without prejudice, and Count Three, which is dismissed with prejudice. The motion is otherwise denied. An appropriate Order follows.

/s Michael A. Shipp
**Michael A. Shipp**
**United States District Judge**

**Dated:** February 28, 2014